IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 1 S.A.N.T., INC. (a/k/a 1 SAINT, INC.) d/b/a TOWN & COUNTRY and d/b/a GATHERINGS BANQUET & EVENT CENTER, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>BERKSHIRE HATHAWAY, INC.; and NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>      Defendants. | Case No. _____20-862_____ |

## CLASS ACTION COMPLAINT

Plaintiff, 1 S.A.N.T., INC. (a/k/a 1 SAINT, INC.) d/b/a TOWN & COUNTRY and d/b/a GATHERINGS BANQUET & EVENT CENTER, brings this Class Action Complaint, individually, and on behalf of all others similarly situated (the "Class'), against Defendants, BERKSHIRE HATHAWAY, INC. and NATIONAL FIRE & MARINE INSURANCE COMPANY (together, "Berkshire" or "Defendant"), alleging as follows:

### NATURE OF THE CASE

1. This is a civil class action for declaratory relief and breach of contract arising from Plaintiff's contract of insurance with the Defendant.

2. At the direction of local, state, and/or federal authorities, Plaintiff was forced to temporarily suspend its dine-in and bar service at its restaurant, tavern and banquet hall beginning on March 17, 2020, causing an interruption to and loss of Plaintiff's business income.

- 2 -

3. Plaintiff and the Class purchased and paid for an "all-risk" Commercial Property Coverage insurance policy from Defendant, which provides broad property insurance coverage for all non-excluded, lost business income, including the losses asserted here.

4. Plaintiff submitted timely notice of its claim to Defendant, but Defendant has refused to provide the purchased coverage to its insured.

5. Defendant has similarly refused to, or will refuse to, honor its obligations under the "all-risk" policy(ies) purchased by Plaintiff and the other members of the putative Class of insureds.

## PARTIES

6. Plaintiff 1 S.A.N.T., INC. (a/k/a 1 SAINT, INC.) d/b/a TOWN & COUNTRY and d/b/a GATHERINGS BANQUET AND EVENT CENTER, is a Pennsylvania corporation, with headquarters in New Castle, Pennsylvania, and is a citizen of Pennsylvania. Plaintiff operates a restaurant and tavern business out of its location at 2552 Ben Franklin Hwy, New Castle, Pennsylvania 16102 ("Covered Property").

7. Defendant BERKSHIRE HATHAWAY INC. is a Delaware corporation with its principal place of business in Omaha, Nebraska, and is a citizen of Nebraska. It owns subsidiaries, directly and indirectly, that issue, among other things, commercial property insurance.

8. Defendant NATIONAL FIRE & MARINE INSURANCE COMPANY ("NATIONAL FIRE") is a corporation with its principal place of business in Omaha, Nebraska, and is a citizen of Nebraska. NATIONAL FIRE is a subsidiary of BERKSHIRE HATHAWAY INC. and a member of the Berkshire Hathaway Primary Group of insurance companies. According to Defendants' 10-K filed with the Securities and Exchange Commission for the fiscal year ended

on December 31, 2019, the Berkshire Hathaway Primary Group had earned premiums of approximately $9.1 Billion.

## JURISDICTION

9. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, which affords federal courts with original jurisdiction over cases where any member of the plaintiff class is a citizen of a state different from any defendant (*i.e.,* so-called "minimum diversity of citizenship,") and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Here, there exists minimal diversity of citizenship because Plaintiff (as well as some members of the Class) and Defendant are citizens of different states, and the aggregated claims of the putative Class members exceed $5,000,000, exclusive of interest and costs.

10. The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in Pennsylvania. At all relevant times, Defendant transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this District.

## FACTUAL BACKGROUND

### Plaintiff Purchased an "All-Risk" Policy of Property Insurance That Broadly Provides Coverage for Loss of Business Income, Among Other Things

12. Plaintiff purchased a contract of insurance from Defendant, whereby Plaintiff agreed to make payments (in the form of premiums) to Defendant in exchange for Defendant's

promise to indemnify Plaintiff for losses at the Covered Property, including, but not limited to, business income losses.

13. Plaintiff's contract of insurance with Defendant bears Policy Number 12PRM049566-02 (the "Policy") and is effective for the period of June 1, 2019 to June 1, 2020 (the "Policy Term"). The Policy is attached hereto as **Exhibit A**.

14. Plaintiff paid all premiums owed to Defendant under the Policy, and Defendant accepted all such premiums from Plaintiff.

15. The Policy is a form policy issued by Defendant.

16. The Policy is an "all-risk" policy, which provides the broadest property insurance coverage available.

17. The Policy provides coverage for "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss."

18. The Policy does not define the phrase "direct physical loss of or damage to . . . ."

19. However, the use of the disjunctive "or" in the phrase "direct physical loss of or damage to" means that coverage is triggered if <u>either</u> a physical loss of property or damage to property occurs. The concepts are separate and distinct and cannot be conflated.

20. Physical loss of, or damage to, property may be reasonably interpreted to occur when a covered cause of loss threatens or renders property unusable or unsuitable for its intended purpose or unsafe for normal human occupancy and/or continued use.

21. The Policy provides Plaintiff with, *inter alia*, various business income and extra expense coverages during the Policy Term.

22. Under the Policy, Defendant agrees to pay: **"the actual loss of Business or Rental Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period**

**of 'restoration.' The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations."** The Policy describes the covered premises as "2552 Ben Franklin Hwy, New Castle, Pennsylvania 16102," the Covered Property, and coverage is listed for "Business Income and Extra Expense" with a Limit of Insurance of "$250,000."

23. Additional coverage is provided under the Policy for business income losses resulting from an "action of civil authority" which prohibits access to the Covered Property, related to a "Covered Cause of Loss" at property other than the Covered Property: **"We will pay for the actual loss of Business or Rental Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."**

24. Members of the Class also purchased a policy of insurance from Defendant providing for the same business income coverage, and using the same form policy provisions.

### In Response to Covid-19, Pennsylvania and Other State Governments Issue Sweeping Orders Shutting Down "Non-Essential" Businesses

25. Severe acute respiratory syndrome coronavirus 2 ("COVID-19") has spread, and continues to spread, rapidly across the United States and has been declared a pandemic by the World Health Organization. *See* https://www.health.harvard.edu/diseases-and-conditions/coronavirus-resource-center (last accessed May 6, 2020).

26. The global COVID-19 pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials for many days.

27.     According to a study published in *The New England Journal of Medicine*, COVID-19 is widely accepted as a cause of real physical loss and damage. It remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last accessed May 6, 2020).

28.     Another study, published in the *Journal of Hospital Infection*, found: "Human coronaviruses can remain infectious on inanimate surfaces at room temperature for up to 9 days. At a temperature of 30°C or more the duration of persistence is shorter." *See* https://www.inverse.com/science/coronavirus-4-studies-explain-how-covid-19-sticks-to-surfaces (last accessed May 6, 2020).

29.     In response to the Covid-19 pandemic, on March 6, 2020, the Governor of Pennsylvania declared a "Disaster Emergency" throughout the Commonwealth of Pennsylvania. Thereafter, on March 16, 2020, the Governor of Pennsylvania ordered that, starting on March 17, 2020, all restaurants and bars were to close their dine-in facilities, limiting their business to carry-out, delivery, and drive-through, and prohibiting all eating and drinking inside restaurants and bars. And finally, on March 19, 2020, the Governor of Pennsylvania issued an Executive Order closing all non-essential businesses.  Specifically, the Executive Order, which became effective immediately upon its issuance, mandated that:

> No person or entity shall operate a place of business in the Commonwealth that is not a life sustaining business regardless of whether the business is open to members of the public.
>
> Governor Wolf, "Order of the Governor of the Commonwealth of Pennsylvania Regarding the Closure of All Businesses that are not Life Sustaining," (Mar. 19, 2020) https://www.governor.pa.gov/wp-content/uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf ("Executive Order").

30.     The Executive Order continued the dine-in prohibition for restaurants and bars.

31. Most other states, including those in which the putative Class members reside and/or do business, have issued similar compulsory shut-down orders for "non-essential" businesses, or businesses deemed not to be "life sustaining."

32. The closure of all "non-life-sustaining businesses" evidences an awareness on the part of both state and local governments that COVID-19 causes loss of or damage to property. This is particularly true in places of business open to the public, as the contact and interaction necessarily incident to such businesses causes a heightened risk of the property becoming contaminated.

33. For example, a New York City Executive Order entered on March 16, 2020 specifically acknowledged that: "[COVID-19] physically is causing property loss and damage." *See* https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf (last accessed May 6, 2020).

34. Similarly, in a March 16, 2020 proclamation, the City of New Orleans acknowledged COVID-19's "propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing property loss and damage in certain circumstances." *See* https://nola.gov/mayor/executive-orders/emergency-declarations/03162020-mayoral-proclamation-to-promulgate-emergency-orders-during-the-state-of-emergency-due-to-co/ (last accessed May 6, 2020).

35. In upholding the Governor of Pennsylvania's Proclamation of a state-wide disaster and the Executive Orders mandating the closure of businesses within Pennsylvania, the Pennsylvania Supreme Court noted the significant risk of the spread of the COVID-19 virus, even in locations where the disease has not been detected:

> Covid-19 does not spread because the virus is "at" a particular location. Instead it spreads because of person-to-person contact, as it has an incubation period of up to

> fourteen days and that one in four carriers of the virus are asymptomatic. Respondents' Brief at 4 (citing Coronavirus Disease 2019, "Symptoms," CDC, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last accessed 4/9/2020)). The virus can live on surfaces for up to four days and can remain in the air within confined areas and structures. *Id.* (citing National Institutes of Health, "Study suggests new coronavirus may remain on surfaces for days," (Mar. 27, 2020) https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days (last accessed 4/9/2020) and Joshua Rabinowitz and Caroline Bartman, "These Coronavirus Exposures Might be the Most Dangerous," The New York Times (Apr. 1, 2020) https://www.nytimes.com/2020/04/01/opinion/coronavirus-viral-dose.html).

*Friends of DeVito v. Wolf*, ___ A. 3d ___, 2020 WL 1847100, *15-16 (Pa. April 13, 2020).

36. Because the COVID-19 virus can survive on surfaces for up to fourteen days, the Pennsylvania Supreme Court ultimately concluded that "any location . . . where two or more people can congregate is within the disaster area."

### Plaintiff Submits a Claim Under Its "All-Risk" Policy, and Defendant Wrongly Fails and Refuses To Honor Its Obligations Respecting Same

37. As a result of the orders governing Plaintiff, the Covered Property closed on March 17, 2020 and remains closed to this day, except for take-out service.

38. Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

39. Plaintiff provided timely notice to Defendant of its claim for the interruption to its business.

40. Defendant denied Plaintiff's claim by letter dated June 4, 2020, attached hereto as **Exhibit B.** In its letter, Defendant posited, *inter alia*, that coverage under the Policy may not be afforded because: (i) Plaintiff's losses do not arise from "physical loss or damage" (seemingly ignoring that coverage can be triggered under the Policy by <u>either</u> "physical loss of" or "damage to" property); and (ii) Plaintiff's claim is barred by the policy's so-called "Virus" Exclusion.

**Contrary To Defendant's Position, Plaintiff's Losses Arise From Direct Physical Loss Or Damage**

41. Plaintiff's Covered Property suffered "direct physical loss or damage" due to the Governor of Pennsylvania's Order (and other local governmental orders) mandating that Plaintiff discontinue its primary use of the Covered Property as a dine-in eating and drinking establishment. The Governor's Order, in and of itself, constitutes a Covered Cause of Loss within the meaning of the Policy.

42. Alternatively, and to the extent the Governor's Order does not constitute a Covered Cause of Loss within the meaning of the Policy, the COVID-19 pandemic and the ubiquitous nature of the COVID-19 virus caused a direct physical loss of or damage to Plaintiff's Covered Property.

43. Further, and as an additional basis for coverage under the Policy, the ubiquitous nature of the COVID-19 virus caused direct physical loss of or damage to property other than Plaintiff's Covered Property, and such loss or damage resulted in an "action by civil authority" prohibiting access to Plaintiff's Covered Property, within the meaning of the Policy.

**Contrary To Defendant's Position, The Virus Exclusion Does Not Apply**

44. The Policy contains a coverage exclusion for "loss or damage caused by or resulting from any virus, bacterium or other microorganism" (Form CP 01 40 07 06) (the "Virus Exclusion").

45. The Virus Exclusion does not preclude coverage for Plaintiff's claim under the Policy.

46. First, to the extent that the governmental orders, in and of themselves, constitute direct physical loss of or damage to Plaintiff's Covered Property, the Virus Exclusion simply does not apply.

- 9 -

47. Further, to the extent that the coverage under the policy derives from direct physical loss or damage caused by the COVID-19 virus, either to Plaintiff's Covered Property or to property other than Plaintiff's Covered property, Defendant should be estopped from enforcing the Virus Exclusion, on principles of regulatory estoppel, as well as general public policy.

48. In 2006, two insurance industry trade groups, Insurance Services Office, Inc. ("ISO") and the American Association of Insurance Services ("AAIS"), represented hundreds of insurers in a national effort to seek approval from state insurance regulators for the adoption of the Virus Exclusion.[1]

49. In their filings with the various state regulators (including Pennsylvania), on behalf of the insurers, ISO and AAIS represented that the adoption of the Virus Exclusion was only meant to "clarify" that coverage for "disease-causing agents" has never been in effect, and was never intended to be included, in the property policies.

50. Specifically, in its "ISO Circular" dated July 6, 2006 and entitled "New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria," ISO represented to the state regulatory bodies that:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage to create sources of recovery for such losses, contrary to policy intent.

51. Similarly, AAIS, in its "Filing Memorandum" in support of the Virus Exclusion, represented:

---

[1] In addition to Form CP 01 40 07 06, which was submitted for approval in most states, the insurance industry also sought approval for Form CP 01 75 07 06 in Alaska, District of Columbia, Louisiana, New York and Puerto Rico, which contained slightly different language related to a mold exclusions that was previously adopted in other states.

> Property policies have not been, nor were they intended to be, a source of recovery for loss, cost or expense caused by disease-causing agents. With the possibility of a pandemic, there is concern that claims may result in efforts to expand coverage to create recovery for loss where no coverage was originally intended . . .
>
> This endorsement clarifies that loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress is excluded . . .

52. The foregoing representations made by the insurance industry were false. By 2006, the time of the state applications to approve the Virus Exclusion, courts had repeatedly found that property insurance policies covered claims involving disease-causing agents, and had held on numerous occasions that any condition making it impossible to use property for its intended use constituted "physical loss or damage to such property."

53. The foregoing assertions by the insurance industry (including Defendant), made to obtain regulatory approval of the Virus Exclusion, were in fact misrepresentations and for this reason, among other public policy concerns, insurers should now be estopped from enforcing the Virus Exclusion to avoid coverage of claims related to the COVID-19 pandemic.

54. In securing approval for the adoption of the Virus Exclusion by misrepresenting to the state regulators that the Virus Exclusion would not change the scope of coverage, the insurance industry effectively narrowed the scope of the insuring agreement without a commensurate reduction in premiums charged. Under the doctrine of regulatory estoppel, the Court should not permit the insurance industry to benefit from this type of duplicitous conduct before the state regulators.

55. Upon information and belief, Defendant has denied, or will deny, other Class members' claims for coverage under their "all-risk" property damage policies issued by Defendant.

56. Defendant's denial of lost business income claims has left Plaintiff and the Class without vital coverage acquired to ensure the survival of their businesses during this temporary suspension of operations.

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings this action individually and as a class action on behalf of the Class, defined as follows:

> All policyholders in the United States who purchased commercial property coverage, including business or interruption income (and extra expense) coverage from Defendant and who have been denied coverage under their policy for lost business income after being ordered by a governmental entity, in response to the COVID-19 pandemic, to shut down or otherwise curtail or limit in any way their business operations.

58. Excluded from the Class are Defendant and its officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their staff.

59. The members of the Class are so numerous and geographically dispersed that joinder would be impracticable. Class members are readily identifiable from information and records in Defendant's possession, custody, or control.

60. There is a well-defined community of interest in the common questions of law and fact affecting the Class members. These common legal and factual questions include, but are not limited to:

    a. whether Defendant owed coverage to Plaintiff and the Class;

    b. whether any exclusions to coverage apply;

    c. whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages; and

        d.    whether Plaintiff and members of the Class are entitled to equitable, declaratory and/or other relief, and if so, the nature of such relief.

      61.    Plaintiff's claims are typical of the claims of the absent class members and have a common origin and basis. Plaintiff and absent Class members are all injured by Defendant's refusal to afford the purchased coverage. Plaintiff's claims arise from the same practices and course of conduct giving rise to the claims of the absent Class members and are based on the same legal theories, namely the refusal to provide insurance coverage for the loss. If prosecuted individually, the claims of each Class member would necessarily rely upon the same material facts and legal theories and seek the same relief. Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.

      62.    Plaintiff will fully and adequately assert and protect the interests of the absent Class members and has retained Class counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiff nor Plaintiff's attorneys has any interests contrary to or conflicting with the interests of absent Class members.

      63.    The questions of law and fact common to all Class members predominate over any questions affecting only individual class members.

      64.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the absent Class members' claims is economically infeasible and procedurally impracticable. Class members share the same factual and legal issues and litigating the claims together will prevent varying, inconsistent, or contradictory judgments, and will prevent delay and expense to all parties and the court system through litigating multiple trials on the same legal and factual issues. Class treatment will also permit Class members to litigate their claims where it would otherwise be too expensive or inefficient to do so. Plaintiff

knows of no difficulties in managing this action that would preclude its maintenance as a class action.

65. Additionally, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making declaratory relief appropriate to the Class as a whole.

## COUNT I
## DECLARATORY RELIEF

66. Plaintiff incorporates by reference each and every allegation set forth above.

67. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

68. An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties in that Plaintiff contends and Defendant disputes and denies that the Policy provides coverage to Plaintiff for any current and future lost business income, subject to the limit of liability, for the temporary suspension of Plaintiff's operations.

69. The Policy provides coverage for "direct physical loss of or damage to" the Covered Property.

70. Plaintiff's loss of use, loss of access, and loss of functionality of the Covered Property when government shutdown orders made it unlawful for Plaintiff to fully access, use, and operate its business at the Covered Property, constitutes a direct physical loss of the Covered Property under the Policy. Alternatively, the ubiquitous nature of the COVID-19 virus caused direct physical loss or damage to the Covered Property by preventing Plaintiff from using the Covered Property for its intended purpose.

71. Additionally, the government shutdown orders or, alternatively, the ubiquitous nature of the COVID-19 virus, caused direct physical loss of or damage to property other than the Covered Property, thereby invoking coverage under the Policy's "Civil Authority" provision for "actual loss of Business or Rental Income . . . caused by action of civil authority that prohibits access to the described premises."

72. The Policy constitutes a valid and binding agreement obligating the Defendant to indemnify Plaintiff for covered losses.

73. Plaintiff has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage pursuant to the Policy and applicable law, or alternatively, Plaintiff has been excused from performance by Defendant's acts, representations, conduct, or omissions.

74. Defendant has failed to indemnify Plaintiff for its covered losses.

75. No exclusion to coverage, including the Virus Exclusion, applies.

76. Plaintiff has suffered and continues to suffer a covered loss under the Policy.

77. Plaintiff, individually and on behalf of the Class, seeks a Declaratory Judgment that there is coverage for its business interruption losses under the Policy.

## COUNT II
## BREACH OF CONTRACT

78. Plaintiff incorporates by reference each and every allegation set forth above.

79. Plaintiff and Defendant entered into a contract of insurance; here, the Policy.

80. The Class members entered into a substantially identical policy with Defendant.

81. Under the Policy, Defendant agreed to indemnify Plaintiff and the Class for their business losses as a result of a covered loss.

82. Plaintiff and the Class members suffered a covered loss under the Policy.

83. Plaintiff and the Class members timely submitted a notice of claim and satisfied all conditions precedent to receiving the coverage it purchased from Defendant.

84. Defendant breached its contract with Plaintiff and the Class members by failing and refusing to provide the contracted for coverage.

85. Defendant's breach of the contract has caused Plaintiff and the Class to suffer damages in the amount of their unreimbursed business losses or their limits of liability, whichever is lower.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

1) For a declaration that there is coverage under the Policy for the interruption to Plaintiff's business and the associated business income lost therefrom;

2) For damages, costs and attorney's fees; and

3) For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Case 2:05-cv-00822-WSS Document 841 Filed 06/1/20 Page 16 of 17

Date: June 11, 2020                                     Respectfully submitted,

                                                             */s/ Gary F. Lynch*
                                                             Gary F. Lynch
                                                             R. Bruce Carlson
                                                             Kelly K. Iverson
                                                             **CARLSON LYNCH LLP**
                                                              1133 Penn Avenue
                                                              5th Floor
                                                              Pittsburgh, PA 15222
                                                              P (412) 322-9243
                                                              F. (412) 231-0246
                                                              glynch@carlsonlynch.com
                                                              bcarlson@carlsonlynch.com
                                                              kiverson@carlsonlynch.com

                                                              *Counsel for Plaintiff*