**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| 1 S.A.N.T., INC. (a/k/a 1 SAINT, INC.) d/b/a TOWN & COUNTRY and d/b/a GATHERINGS BANQUET & EVENT CENTER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>BERKSHIRE HATHAWAY, INC.; and NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>        Defendants. | Civil Action No. 20-862<br><br>Judge William S. Stickman IV |

**NATIONAL FIRE & MARINE INSURANCE COMPANY'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

THE COMPLAINT ...............................................................................................3

STANDARD OF REVIEW .......................................................................................5

ARGUMENT ......................................................................................................6

I.      THE VIRUS EXCLUSION REQUIRES DISMISSAL OF THE COMPLAINT. ..............7

      A.      VIRUS IS PLAINLY AN EXCLUDED PERIL. ...........................................8

      B.      THE ESTOPPEL ALLEGATIONS CANNOT VOID THE VIRUS EXCLUSION. ..............9

            1.      IT IS NOT ALLEGED THAT NATIONAL FIRE CHANGED ITS POSITION.....10

            2.      IT IS NOT ALLEGED THAT NATIONAL FIRE ACTED IN BAD FAITH. .......11

            3.      ALLEGEDLY FALSE STATEMENTS ARE IRRELEVANT TO ESTOPPEL. ......11

            4.      THE COMPLAINT ALSO RUNS AFOUL OF *TWOMBLY*. ..............................12

II.      THE LACK OF ALLEGED ACTUAL PROPERTY DAMAGE REQUIRES DISMISSAL. .............13

      A.      THE ALLEGATION THAT THE VIRUS IS "UBIQUITOUS" IS INSUFFICIENT. ..........14

      B.      GOVERNMENT ORDERS ARE ALSO INSUFFICIENT. ...........................................15

III.      THERE IS ALSO NO CIVIL AUTHORITY COVERAGE BECAUSE THE RESTAURANT REMAINED ACCESSIBLE. ..........................................................................................17

CONCLUSION....................................................................................................19

**Federal Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..................................................................6

*Bamundo, Zwal & Schermerhorn, LLP v. Sentinel Ins. Co.,* 2015 WL 1408873
    (S.D.N.Y. March 26, 2015)..............................................................................9

*Bell Atlantic Corp., et al. v. Twombly, et al.*, 550 U.S. 544 (2007) ......................6, 12

*Brothers, Inc. v. Liberty Mutual Fire Ins. Co.*, 268 A.2d 611 (D.C. Cir. 1970) .....................16

*By Development, Inc. v. United Fire & Cas. Co.*, No. Civ. 04-5116, 2006 WL
    694991 (D. S.D. March 14, 2006) ..................................................................17

*Certain Underwriters and Lloyd's London v. Brownie's Plymouth*, 24 F. Supp
    2d 403 (E.D. Pa. 1998)....................................................................................7

*Certain Underwriters at Lloyd's London v. Creagh*, 2013 WL 3213345 (E.D.
    Pa. 2013), *aff'd*, 563 Fed.Appx. 209 (3d Cir. 2014) .........................................9

*Colony Ins. Co. v. Mid-Atlantic Youth Svs Corp.*, 2010 WL 817703 (MD Pa.
    2010) ..............................................................................................................8

*Dickie Brennan & Co, Inc. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011) ....................15

*Hussey Copper Ltd. v. Royal Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 81834
    (W.D. Pa. June 3, 2009), *aff'd*, 391 Fed. Appx. 207 (3d Cir. 2010)..................10

*Hussey Copper Ltd. v. Royal Ins. Co. of Am.*, No. 09-4037 (3d. Cir. Aug. 23,
    2010) ............................................................................................................10

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1251 (3d Cir. 1994)...........................5

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. National
    Fire Ins. Co. of Hartford*, 2007 WL 2489711 (N.D. La. August 28, 2007) .....................18

*Kline v. The Kemper Group*, 826 F. Supp. 123 (E.D. Pa. 1993)................................7

*Lombardi v. Allstate Ins. Co.*, 2009 WL 1811540 (WD Pa. 2009)..........................12

*Mark I Restoration Svc v. Assurance Co. of America*, 248 F. Supp.2d 397
    (E.D.Pa. 2003).................................................................................................7

*Neuhard v. Range Resources – Appalachia, LLC,* 29 F.Supp.3d 461 (M.D. Pa.
    2014) ............................................................................................................17

*Pacific Indem. Co. v. Linn*, 766 F.2d 754(3d Cir. 1985) .............................................................7

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715 (N.D. GA
    Dec. 15 2004) ...........................................................................................................16, 18

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d. Cir. 2008).............................................11

*Reliance Ins. Co. v. Moessner*, 121 F.3d 895 (3d Cir. 1997)...................................................7

*In re Rockefeller Crt. Properties, Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002) .....................11

*Sentinel Ins. Co. v. MonarchMed Spa, Inc*, 105 F.Supp. 3d 464 (E.D. Pa. 2015).....................9

*Simon Wrecking Co. v. AIU Ins. Co.*, 541 F. Supp.2d 714 (E.D. Pa. 2008) ...................... 10-11

*Social Life Magazine Inc. v. Sentinel Insurance Co. Ltd.*, 20-cv-3311 (SD NY)....................13

*South Texas Medical Clinics, P.A. v. CNA Financial Corp.*, 2008 WL 450012
    (S.D. Tex. Feb. 15, 2008)...............................................................................................15

*Southern Hospitality, Inc. v. Zurich Am. Ins.*, 393 F.3d 1137 (10th Cir. 2004) .....................18

*Spruill v. Gillis*, 372 F.3d 218 (3d. Cir. 2004) .........................................................................5

*Symonies v. Sobol*, 545 B.R. 477 (M.D.Pa. Bankr. 2016) .......................................................11

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128 (2d Cir. 2006).......................16

*Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F.Supp.2d 677
    (W.D. Pa. 2008) ........................................................................................................8, 16

**State Cases**

*Guardian Life Ins. Co. of America v. Zerence*, 479 A.2d 949 (Pa. 1984) ...............................17

*Heller v. Pa. League of Cities and Mun.*, 32 A.3d 1213 (Pa. 2011)..........................................7

*Lower Paxton Twp v. U.S. Fidelity and Guaranty, Co.*, 557 A.2d 393 (Pa.
    Super. 1989)....................................................................................................................8

*Two Caesars Corp. v. Jefferson Ins. Co.*, 280 A.2d 305 (D.C. App. 1971) ...........................16

**Federal Statutes and Rules of Court**

Federal Rule 8(a)(2)..............................................................................................................12

Federal Rule 9(b) ..................................................................................................................12

Federal Rule 12(b) ...................................................................................................passim

**Other Authorities**

Elizabeth Blofeld, *More States Introduce COVID-19 Business-Interruption Bills*, Claims Journal (Apr. 16, 2020), www.claimsjournal.com/news/national/2020/04/16/296600.htm. .....................................13

"Magazine Turns to 2d Cir. in Coronavirus Coverage Fight," *Claims Journal* (May 18, 2020), law360.com/articles/1274622 ................................................................14

July 7, 2020 Transcript in *Gavrilides v. Michigan Ins. Co.*, File No. 20-258-CB (Ingham County Michigan) (Judge Draganchuk) ................................................................2

DM1\11241815.7

**INTRODUCTION**

Plaintiff, the operator of a restaurant and tavern business, has filed this putative class action lawsuit against National Fire & Marine Insurance Company ("National Fire") seeking coverage for alleged lost business income resulting from the suspension or reduction of its operations as a result of the COVID-19 pandemic.  National Fire properly denied Plaintiff's claim for coverage under the Policy because:  (1) Plaintiff did not sustain "direct physical loss of or damage to Covered Property" necessary to trigger coverage under the policy; (2) Plaintiff's alleged loss or damage is excluded under the policy because it was caused by COVID-19, a virus; and (3) the orders issued by state and local governments in response to COVID-19 did not prohibit access to Plaintiff's property, a requirement for Civil Authority coverage.

There are cases throughout the country involving claims for business interruption coverage arising from the COVID-19 pandemic.  A great many are in federal courts awaiting a decision by the Judicial Panel on Multi-District Litigation for possible consolidation in an MDL at policyholders' request – a request vigorously opposed by insurers and many policyholders. The MDL Panel will hear oral argument on July 30th.  National Fire believes the JPML should and will decline to consolidate these cases.

National Fire, however, does not seek referral of this case for consolidation because, among other reasons, this case presents a simple issue for an immediate and decisive exit under Federal Rule 12(b).  Namely, this case presents a virus exclusion in the insurance policy that should be enforced, which should result in the dismissal with prejudice.  In addition, dismissal with prejudice is proper because the alleged loss of business income due to COVID restrictions does not constitute physical loss or damage as required for coverage under the Policy.

The decision of this Court will be important, and widely reported. This could be the first decision on enforcement of the virus exclusion for COVID-19 in federal court. National Fire is unaware of any federal court having decided this dispositive issue (though courts have routinely enforced virus exclusions in other circumstances over the years). Earlier this month, the first state court ruled on these exact issues, finding no coverage both because there was no direct physical loss or damage and, alternatively, because the virus exclusion applied.[1]

There is no coverage under this Policy because there was no direct physical loss or damage. Moreover, the virus exclusion plainly applies to exclude Plaintiff's claims for COVID-related losses. This is why Plaintiff tries to plead that the doctrine of regulatory estoppel somehow voids the virus exclusion. Plaintiff's attempt is futile on its face. Most importantly, National Fire has never changed its position on the virus exclusion. Indeed, National Fire wholeheartedly agrees with the 2006 statements quoted about the virus exclusion in Plaintiff's Complaint. Anticipation of a possible pandemic was exactly the point of the virus exclusion, as Plaintiff's own allegations make clear. Complaint ¶¶ 50-51. There can be no issue of estoppel.

While the virus exclusion disposes of the entire case, there are other reasons to dismiss the Complaint. In addition to various pleading defects, there are two additional and independent reasons for the Court to reject the claims for coverage. First, there is no credible allegation of "direct physical loss of or damage to Covered Property," which is a requirement of coverage. Instead, Plaintiff asks the Court to re-write the insurance policy to have the Governor's Order

---

[1]    The July 7, 2020 decision in the Transcript for *Gavrilides v. Michigan Ins. Co.*, File No. 20-258-CB (Ingham County Michigan) (Judge Draganchuk) is attached as Exhibit A.

DM1\11241815.7

be substituted for actual damage, and also, desperately, asks the Court to believe that the virus is "ubiquitous."

Second, Plaintiff does not allege that access to the covered property was prohibited, a condition of the policy's Civil Authority coverage. Rather, Plaintiff admits that its business has remained open for take-out service. *Id.* ¶ 8. Even if access to the property was prohibited, Civil Authority coverage still requires "direct physical loss of or damage to" other property and such loss or damage must be caused by a Covered Cause of loss. No other property suffered such loss or damage which triggered the action of civil authority. The situation in Pennsylvania, as in other states – namely, a pandemic causing state and local governments to issue orders to prevent the spread of COVID-19 – is fundamentally different from a fire or flood that damages property. Furthermore, even if Plaintiff could establish there was direct physical loss of or damage to other property which triggered the action of civil authority, which it cannot, such damage or loss would be caused by COVID-19, a virus, which is excluded under the policy.

National Fire respectfully requests that the Court enforce the insurance policy as written, and dismiss Plaintiff's Complaint with prejudice.

## The Complaint

The Complaint has two counts: one for declaratory judgment; and the other for breach of contract. Both seek coverage for business income. Both present the same coverage issues.

### *The Executive Orders Result in Partial Closure of the Restaurant*

Plaintiff alleges its restaurant "closed on March 17, 2020 … except for take-out service." Complaint ¶ 37. Plaintiff does not allege that COVID-19 has physically contaminated its restaurant. No restaurant employee or customer is alleged to have caught COVID-19. *See also id.*, Exhibit B (Plaintiff "[knows] of no one with COVID-19 who came into contact with

[the] building"). Plaintiff generally alleges "the ubiquitous nature of the COVID-19 virus." *Id.* ¶ 70.

Plaintiff stopped its dine-in service because of Governor Wolf's Executive Orders. *Id.* ¶¶ 29-30. The Executive Orders do not state that COVID-19 has been present at Plaintiff's restaurant. *Id.* ¶ 29. The Pennsylvania Supreme Court's ruling upholding the Executive Orders also does not state that COVID-19 has been present at the restaurant. *Id.* ¶¶ 35-36.

Plaintiff alleges "an awareness on the part of both state and local governments that COVID-19 causes loss or damage to property." *Id.* ¶ 32. Plaintiff alleges that other states' executive orders evidence this awareness. *Id.* ¶¶ 33-34. It is not alleged that any governmental or health entity knows that COVID-19 has contaminated the restaurant.

Plaintiff alleges that coverage has been triggered by the Governor's Order and also "the COVID-19 pandemic and the ubiquitous nature of the COVID-19 virus." *Id.*, ¶¶ 41-43.

*Business Income and Civil Authority Coverage*

Plaintiff attaches its insurance policy with National Fire ("the Policy"). *Id.* Exhibit A. Under its Business or Rental Income coverage, the insuring agreement of the Policy provides: "we will pay for direct physical loss of or damage to" the restaurant, subject to the other terms, conditions, and exclusions of the Policy. *Id.* ¶¶ 17, 22.[2] The term "direct physical loss of or damage to" is not defined in the policy. *Id.* ¶ 18.

Likewise, the Civil Authority coverage provision in the Policy requires "direct physical loss of or damage to property," but at property "other than at the described premises, caused by

---

[2]     The term "business interruption" is colloquial. It is not the title of the Policy nor a term therein. The Policy is for "Business or Rental Income (and Extra Expense)" under defined conditions set forth in the Memo.

DM1\11241815.7

or resulting from any Covered Cause of Loss." *Id.* ¶ 23.  Furthermore, this coverage requires

an "action of civil authority that prohibits access to" the restaurant.  *Id.*

*The Virus Exclusion*

The insurance policy "contains a coverage exclusion for 'loss or damage caused by or

resulting from any virus, bacterium, or other microorganism.'"  *Id.* ¶ 44.  *See also id.* Exhibit

A.  The exclusion was drafted to address "the specter of pandemic" from "contamination by

disease-causing agents." *Id.* ¶ 50.  The exclusion is attached as Exhibit B to this Memorandum.[3]

Plaintiff alleges that National Fire is estopped from applying the virus exclusion "on

principles of regulatory estoppel." *Id.* ¶ 47.  Plaintiff alleges that industry trade groups made

purportedly false statements to state regulators in 2006 with respect to the virus exclusion.  ¶¶

48-54.  Plaintiff alleges no detail that the statements were false, nor does Plaintiff attach the full

statements to the Complaint.  Plaintiff does not allege that National Fire has ever changed its

position with respect to the virus exclusion.

## Standard of Review

In deciding motions to dismiss, courts must accept all well-pleaded allegations in the

complaint as true and draw all reasonable inferences in favor of the non-moving party, *Jordan*

*v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1251, 1261 (3d Cir. 1994), as well as "exhibits

attached to the complaint, matters of public record, and documents that form the basis of a

claim."  Courts "may consider these documents, as well as indisputably authentic documents,

---

[3]     There are other applicable exclusions in the Policy's Causes of Loss – Special
Form, as noted in Exhibit A (page 6) to the Complaint.  They include "Ordinance or Law"
(B.1.a.); Governmental Action (B.1.c.); "Acts or decisions…" (B.3.b.); Delay, loss of use or
loss or market (B.2.b); and the "pollution" exclusion (B.2.1.).

without converting a motion to dismiss into a motion for summary judgment." *Spruill v. Gillis*, 372 F.3d 218, 223 (3d. Cir. 2004).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim that can survive a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 677-678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels, conclusions; a formulaic recitation of a cause of action's elements is insufficient. Factual allegations must be enough to raise a right to relief above the speculative level…." *Bell Atlantic Corp., et al. v. Twombly, et al.*, 550 U.S. 544, 545 (2007) (further explaining that a merely "conceivable" claim is not sufficient). A plaintiff's claims and factual allegations must be plausible and rise above mere speculation. *Iqbal,* 556 U.S. 662, 678; *Twombly,* 550 U.S. 544, 555-556.

## Argument

The Policy provides standard industry terms that on their face exclude coverage. Plaintiff purchased coverage for the suspension of its business after suffering direct physical loss of or damage to covered property by a covered peril, and/or after a civil authority order prohibited access to its business after similarly-caused direct physical loss of or damage to other property. The coverage it purchased, however, could not more plainly exclude a loss due to COVID-19.

Instead of what it actually purchased, Plaintiff wants coverage for actions taken by state and local governments in response to a pandemic. Plaintiff wants to nullify essential contract terms, including (a) the requirement of actual physical damage, (b) the virus exclusion

altogether, and (c) the requirement of Civil Authority coverage that access to the premises be prohibited. Plaintiff's jettisoning of these critical policy terms should be rejected.

## I. The Virus Exclusion Requires Dismissal of the Complaint.

Courts routinely dismiss coverage complaints on the basis of exclusions in the insurance policy. *See, e.g., Mark I Restoration Svc v. Assurance Co. of America*, 248 F. Supp.2d 397 (E.D.Pa. 2003) (granting insurer's 12(b)(6) motion because the plain and unambiguous language of the pollution exclusion in the policy precluded coverage for the claimed loss); *Certain Underwriters and Lloyd's London v. Brownie's Plymouth*, 24 F. Supp 2d 403, 405 (E.D. Pa. 1998) (granting insurer's 12(c) and 12(b)(6) motion because the "assault & battery / negligent hiring" exclusion in the policy was clear and unambiguous and precluded coverage). "Plainly-worded coverage exclusions are given effect so long as they are conspicuously displayed." *Kline v. The Kemper Group*, 826 F. Supp. 123, 127 (E.D. Pa. 1993) (granting insurer's motion to dismiss).

It is important to enforce the plain language of an insurance policy. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 901 (3d Cir. 1997) ("If, however, the terms of the policy are clear and unambiguous the general rule in Pennsylvania is to give effect to the plain language of the agreement.") (citations omitted). "In construing an insurance policy, if the words of the policy are clear and unambiguous, the court must give the words their plain and ordinary meaning." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760-61(3d Cir. 1985)); *Heller v. Pa. League of Cities and Mun.*, 32 A.3d 1213, 1220 (Pa. 2011) ("Courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy.").

DM1\11241815.7

Exclusions are no exception for enforcement. *Id.* at 761 ("Exclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed.…"). *See also Lower Paxton Twp v. U.S. Fidelity and Guaranty, Co.*, 557 A.2d 393 (Pa. Super. 1989), *alloc. denied*, 567 A.2d 653 (Pa. 1989) ("having found the exclusion unambiguous on its face, we are bound to construe it in accordance with its plain meaning").

### A.     Virus Is Plainly an Excluded Peril.

The virus exclusion excludes coverage for "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  Complaint, ¶ 44.  Plaintiff does not allege that the exclusion is ambiguous. Complaint, ¶¶ 44-54.  Instead, Plaintiff alleges that the virus exclusion cannot be enforced due to the doctrine of regulatory estoppel.  National Fire will address that doctrine in the next sub-section.

The policy should be plainly construed.  *Colony Ins. Co. v. Mid-Atlantic Youth Svs Corp.*, 2010 WL 817703 (MD Pa. 2010) ("the language of an insurance policy may not be stretched beyond its plain meaning to create an ambiguity.") (citations omitted); *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F.Supp.2d 677 (W.D. Pa. 2008) ("'The Court cannot… distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.  The polestar of our inquiry, therefore, is the language of the insurance policy. . . . Courts should read policy provisions to avoid an ambiguity if possible.'") (citations omitted).

The coverage for Business or Rental Income (and Extra Expense) requires "direct physical loss of or damage by a Covered Property . . . <u>caused by or resulting from a Covered</u>

Cause of Loss." (emphasis added). COVID-19, a virus, is plainly excluded as a potential Covered Cause of Loss under the Virus Exclusion. Similarly, the Civil Authority coverage requires an "action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, <u>caused by or resulting from any Covered Cause of Loss</u>." (emphasis added). Because COVID-19 is an excluded peril, there is no coverage under the additional coverage for Civil Authority. *See, e.g., Bamundo, Zwal & Schermerhorn, LLP v. Sentinel Ins. Co.,* 2015 WL 1408873, at *4 (S.D.N.Y. March 26, 2015) (holding that insured's business interruption loss arising from NYC evacuation order for Hurricane Sandy was not covered by civil authority provision because the order was issued due to flooding which was an excluded peril under the policy).

Virus/bacteria exclusions are regularly enforced. *See, e.g., Sentinel Ins. Co. v. MonarchMed Spa, Inc*, 105 F.Supp. 3d 464, 472 (E.D. Pa. 2015) (holding that the policy's exclusion for fungi, bacteria and viruses applied to preclude coverage for claims arising from surgical bacterial infections) ("Artful pleadings designed to avoid exclusions in liability insurance policies will not overcome the text and factual allegations of the complaint."); *Certain Underwriters at Lloyd's London v. Creagh*, 2013 WL 3213345, at *3, *4 (E.D. Pa. 2013), *aff'd*, 563 Fed.Appx. 209 (3d Cir. 2014) (holding that policy's microorganism exclusion precluded coverage for "mold, mildew, fungus, spores or other microorganism of any type, nature or description…."; precluding coverage for damages over decomposing body found in an apartment).

### B. The Estoppel Allegations Cannot Void the Virus Exclusion.

Plaintiff invokes the doctrine of "regulatory estoppel" to try to void the exclusion. This "Hail Mary" is defective on its face.

The elements of the doctrine include:

> Even under the most liberal reading of the regulatory estoppel doctrine, Plaintiff is required to show that: (1) Defendant (in this case, through ISO) made a statement to a regulatory agency; and (2) Defendants have taken a position in this litigation "opposite" the one presented to the regulatory agency.

*Hussey Copper Ltd. v. Royal Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 81834, *14-15 (W.D. Pa. June 3, 2009), *aff'd*, 391 Fed. Appx. 207 (3d Cir. 2010).

A "requisite level of culpability" is also required. *Simon Wrecking Co. v. AIU Ins. Co.*, 541 F. Supp.2d 714, 717 (E.D. Pa. 2008) (explaining the elements of regulatory estoppel). The Court explained:

> [T]he Supreme Court of Pennsylvania has repeatedly asserted that judicial estoppel was designed to prevent [litigants] from playing 'fast and loose' with the judicial system. The Supreme Court of Pennsylvania adopted this principle of playing "fast and loose" from the federal courts…. According to the Third Circuit, playing "fast and loose" with the courts may require proof that a party changed its position in bad faith.

*Id*. (citations omitted).

As set forth below, there are several reasons why Plaintiff's invocation of regulatory estoppel is flawed and unsustainable.

### 1. Plaintiff Does Not Allege National Fire Changed Its Position.

The most fundamental reason why estoppel does not apply is that National Fire did not change its position. Nowhere in the Complaint is there an allegation that National Fire changed its position. Indeed, National Fire absolutely stands behind the statements of the ISO/AAIS recited in the Complaint at ¶¶ 50-51. The virus exclusion was indeed intended to resolve "the concern that insurers … may face claims in which there are efforts to expand coverage" for

losses "involving contamination by disease-causing agents." *Id.*, ¶ 50. "[T]he specter of pandemic" raised the concern. *Id.* Exactly.

It is fatal to the estoppel claim that National Fire did not change its position. *Hussey Copper Ltd. v. Royal Ins. Co. of Am.*, No. 09-4037 (3d. Cir. Aug. 23, 2010) (affirming summary judgment on behalf of the insurer, in part, on the basis that "ISO's statements were not so contrary to Arrowood's position that Arrowood should be estopped from invoking the pollution exclusion here").

### 2. Plaintiff Does Not Allege National Fire Acted In Bad Faith.

Because National Fire has never changed its position and, indeed, agrees with the trade groups' prior statements from almost fifteen years ago cited in the Complaint, there is nothing to assess about National Fire's "requisite level of culpability." *Simon Wrecking Co. v. AIU Ins. Co.*, 541 F. Supp.2d 714, 717 (E.D. Pa. 2008). In any event, the lack of any allegation that National Fire had "some level of culpability" for a purported change in position is an independent reason to disregard the doctrine of regulatory estoppel.

### 3. Allegedly False Statements Are Irrelevant to Estoppel.

It is a change in position – specifically, the "playing fast and loose" with the judicial system, as described by Judge Anita Brody in *Simon Wrecking* – that is the focus of the doctrine of regulatory estoppel. Since Plaintiff cannot show a change in National Fire's position, Plaintiff instead tries to re-frame its pitch for regulatory estoppel around purportedly "false" statements made by ISO/AAIS in 2006. Complaint, ¶ 52.

It is not an element of regulatory estoppel that the original (first) statements were false. This is misdirection. There is zero controlling legal authority that Plaintiff may allege a false statement in lieu of alleging a change in position. Never mind that the statements in 2006 were

11

demonstrably not false.  Never mind that Plaintiff alleges only in conclusory terms that they were purportedly false.  The fact is that a purportedly false original statement is irrelevant.  A change in position is the element.

It is no accident that Plaintiff has tried to alter the doctrine of regulatory estoppel.  A court can readily determine on the face of the pleadings whether a party has changed its position.  But a court typically cannot readily determine on the face of the pleadings whether an allegedly false statement is, in fact, false.  Allowing regulatory estoppel to rest on a purportedly false statement in lieu of a change in position would be a dramatic expansion of the doctrine in practical terms.  It would allow the enforcement of an exclusion only after discovery and perhaps only after a jury trial.  This would put an end to the practical utility of the exclusion.[4]

### 4.        The Complaint Also Runs Afoul of *Twombly.*

Plaintiff's theory of regulatory estoppel is implausible on its face, and lacks support that National Fire ever changed its position or acted with "some culpability."  The Court is not obliged to suspend its critical faculties and allow the Plaintiff a free pass into discovery.

Instead, the opposite is true.  "[A]fter *Twombly*, it is no longer sufficient to merely allege the elements of a cause of action; rather, *Twombly* requires that the complaint 'allege facts suggestive of [the proscribed] conduct.'"  *Lombardi v. Allstate Ins. Co.*, 2009 WL 1811540 (WD Pa. 2009) (granting insurer's 12(b)(6) motion for policyholder's failure to meet the

---

[4]        National Fire must object to Plaintiff alleging that National Fire made false statements in the first place.  Plaintiff alleges at Complaint, ¶ 53:  "The foregoing assertions by the insurance industry (including Defendant) … were in fact misrepresentations…."  This allegation of a false statement *by National Fire* violates Rule 9(b)'s requirement for particularity, and should be stricken.  *See, e.g.*, *Symonies v. Sobol*, 545 B.R. 477, 487 (M.D.Pa. Bankr. 2016) ("The Third Circuit has held that when a claim 'sound[s] in fraud' the complaint requires 'well-pleaded allegations of fraudulent misrepresentations or omission.'"), *citing In re Rockefeller Crt. Properties, Inc. Sec. Litig*., 311 F.3d 198, 212 (3d Cir. 2002).

*Twombly* pleading standards) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d. Cir. 2008)). "In light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Lombardi*, at *22 n.11.

Amendment of the Complaint would be futile. Plaintiff's invocation of regulatory estoppel is fatally defective. Dismissal with prejudice is appropriate.

## II.      The Lack of Alleged Actual Property Damage Requires Dismissal.

Section I, above, addresses why the virus exclusion would apply *if* Plaintiff could satisfy the coverage requirement of actual property damage. There is an additional independent basis to dismiss the Complaint with prejudice. Coverage for business interruption requires the lost profits to be caused by "direct physical loss or damage" to Plaintiff's restaurant. The allegations in the Complaint do not satisfy this coverage requirement.

The Pennsylvania Insurance Commissioner, Jessica Altman, recently explained this requirement in a public statement:

> As a general matter, business interruption insurance will only pay when there has been a physical loss (such as a fire) to the premises of the building[.] The product generally was not designed or priced to cover communicable diseases, such as COVID-19, and generally policies that we have seen in mediating complaints contain clear exclusions.

Elizabeth Blosfeld, *More States Introduce COVID-19 Business-Interruption Bills*, Claims Journal (Apr. 16, 2020), claimsjournal.com/news/national/2020/04/16/296600.htm. This is attached as Exhibit C to this Memorandum.

The requirement of actual property damage is a vital underwriting requirement for business income coverage. If this requirement is eliminated by judicial fiat, as Plaintiff desires, it would lead to vastly greater exposures than were ever intended to be underwritten. One

cannot fairly read out of the insurance policy the requirement of actual physical damage (or the virus exclusion).

Plaintiff tries two maneuvers to skirt the requirement of actual property damage. One maneuver is to try to satisfy the requirement by pleading obvious hyperbole (the virus is "ubiquitous"!). The other maneuver is to try to substitute the Governor's Orders in lieu of actual property damage. Both maneuvers should be rejected.

## A. The Allegation That the Virus Is "Ubiquitous" Is Insufficient.

Plaintiff does not allege the presence of COVID-19 at its restaurant. No employee or customer is alleged to have caught COVID-19. No positive test of COVID-19 is alleged. Instead, Plaintiff alleges "the ubiquitous nature" of the virus. This cannot suffice as a concrete allegation of the virus at the restaurant or at nearby businesses, much less that it would have caused "direct physical loss of or damage to Covered Property." [5]

Consistent with *Twombly*'s pleading requirements, the Court is entitled to apply its judgment to reject the hyperbole. If the virus were truly "ubiquitous," it would be in every business, and every person would have caught it. The allegation is obviously literally untrue. If Plaintiff had reasonable grounds to allege that the virus was present at its restaurant and causing physical damage thereto, Plaintiff would have so alleged.

---

[5]    Even if COVID-19 had actually contaminated Plaintiff's restaurant, there would still be no property damage. The only federal case that we are aware of that has considered whether COVID-19 causes "property damage" is *Social Life Magazine Inc. v. Sentinel Insurance Co. Ltd.*, 20-cv-3311 (SD NY) (Judge Valerie Caproni). In "opining that Social Life's property has not suffered any damage," Judge Caproni replied as follows to Plaintiff's contention that "the virus exists everywhere": "It damages lungs. It doesn't damage printing presses." "Magazine Turns to 2d Cir. in Coronavirus Coverage Fight," *Claims Journal* (May 18, 2020), www.law360.com/articles/1274622. This is attached as Exhibit D to this Memorandum. In the case at bar, of course, it is not even alleged that COVID-19 has contaminated the premises.

**B.     Government Orders Are Also Insufficient.**

In lieu of actual physical damage at the restaurant, Plaintiff relies on Governor Wolf's Executive Orders.  But these Orders on their face did not find the virus to be present at the restaurant.  Instead, Plaintiff somehow posits that the Orders themselves serve as the cause of "direct physical loss."  *Id.* ¶ 71.  The Orders themselves are pieces of paper.

Plaintiff's alleged loss was caused by the pandemic, not by property damage.  COVID-19 may cause death or lung damage, but it does not cause property damage (even if Plaintiff alleged it contaminated the restaurant).  Indeed, the very fact that Governor Wolf's Executive Orders distinguish between "essential" and "non-essential" services proves the point.  An "essential" business could continue fully functioning while a "non-essential" business had restrictions.  They were not physically damaged, but rather the acceptable degree of pandemic risk associated with them was different.  If this business had been deemed "essential," it would have remained fully open.  Under the Plaintiff's theory, there would be no property damage if Plaintiff's business was deemed essential.

Physical damage remains absolutely necessary, as Commissioner Altman has observed. *See, e.g., Dickie Brennan & Co, Inc. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) (affirming ruling that civil authority order mandating evacuation prior to landfall of hurricane did not trigger coverage under restaurant group's policy because their losses from their inability to conduct business were not caused by a direct physical loss); *South Texas Medical Clinics, P.A. v. CNA Financial Corp.*, 2008 WL 450012, at *6, *10 (S.D. Tex. Feb. 15, 2008) (ruling in favor of insurer to find no civil authority coverage where the evacuation order was issued based on predicted landfall of hurricane, rather than physical damage caused by the hurricane; the civil order "was based on the anticipated threat of damage" rather than a physical loss);

DM1\11241815.7

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715, at *7 (N.D. GA Dec. 15 2004) (ruling in favor of insurer on the grounds that the business losses alleged by Plaintiff's airport shops as a result of civil order grounding air travel following the 9/11 attacks; "an order … that is designed to prevent, protect against, or avoid future damage is not a 'direct result' of already existing property loss or damage"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 135 (2d Cir. 2006) (affirming that if a civil authority order is caused by fears of future attacks, and not by the need to "'repair, mitigate, or respond' to physical damage inflicted on property," then there is no coverage for business interruption).

Civil orders that restrict business operations are not, standing alone, the cause of loss needed to trigger business income coverage. *See, e.g., Brothers, Inc. v. Liberty Mutual Fire Ins. Co.*, 268 A.2d 611, 613 (D.C. Cir. 1970) (finding no business interruption coverage for losses due to restriction on business hours and sale of alcohol as a result of curfews and municipal regulations imposed during civil disorder following the assassination of Martin Luther King Jr. where "there was no physical damage to the property"); *Two Caesars Corp. v. Jefferson Ins. Co.*, 280 A.2d 305, 307-308 (D.C. App. 1971) (denying business interruption coverage) ("access to [the] restaurant during the hours of the curfew was not prohibited because of damage to or destruction of its property by riot or civil commotion, but rather to achieve a compelling and legitimate governmental objective – that of facilitating the movement of police and fire fighting equipment during an actual or anticipated emergency").

There is no ambiguity alleged about the civil authority coverage's requirement of direct physical damage or loss. Nor could there plausibly be. *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F.Supp.2d 677 (W.D. Pa. 2008) ("'The Court cannot… distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. The

polestar of our inquiry, therefore, is the language of the insurance policy. . . . Courts should read policy provisions to avoid an ambiguity if possible.'") (citations omitted); *Guardian Life Ins. Co. of America v. Zerence*, 479 A.2d 949, 953 (Pa. 1984) ("[The Court] may not rewrite an insurance contract, under the guise of judicial interpretation, to expand coverage beyond that provided in the policy.").

Likewise, it would also violate fundamental principles of contract construction to render the requirement moot or meaningless. *See, e.g., Neuhard v. Range Resources – Appalachia, LLC,* 29 F.Supp.3d 461 (M.D. Pa. 2014) ("'[a] contract should not be interpreted in a manner that renders provisions meaningless, superfluous, unreasonable, contradictory, or would lead to absurd results.' Dismissing the plain language of the [contract's] permission requirement would be contrary to firmly established law by rendering the provision meaningless, and the Court declines to do so.") (internal citations omitted).

## III.    There Is Also No Civil Authority Coverage Because the Restaurant Remained Accessible.

Civil authority coverage is not triggered on the face of the Complaint.  A requirement of such coverage, in addition to the requirements of a covered cause of loss and direct physical loss of or damage to property, is that access to the business premises be prohibited by civil order.  Here, Plaintiff acknowledges that the restaurant has remained open for take-out (and delivery) services.  Employees have thus accessed the business, and serviced customers.  There has been no "yellow tape" saying "do not cross" around the premises.

Partial access does not suffice under business income coverage.  *See, e.g.*, *By Development, Inc. v. United Fire & Cas. Co*., No. Civ. 04-5116, 2006 WL 694991, at *6 (D. S.D. March 14, 2006) (holding that civil order making access to insured's property more

difficult, but not prohibiting access, did not trigger business-interruption coverage); *Southern Hospitality, Inc. v. Zurich Am. Ins*., 393 F.3d 1137, 1140 (10th Cir. 2004) (finding no coverage under hotel's civil authority provision because FAA order prohibiting airplanes from flying did not prohibit all access to hotel operations) ("The plain and ordinary meaning of 'prohibit' is to 'formally forbid, esp. by authority' or 'prevent.' Oxford American Dictionary and Language Guide 795 (1999)."); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. National Fire Ins. Co. of Hartford*, 2007 WL 2489711, *4 (N.D. La. August 28, 2007) (finding no coverage under insured hotel's civil authority coverage because the direction of Baton Rouge officials to stay off streets did not deny access to business's premises); *Paradies Shops, Inc. v. Hartford Fire Ins. Co*., 2004 WL 5704715, at *8 (N.D. GA Dec. 15 2004) (ruling in favor of insurer) ("Unless the airports were actually closed by some civil authority, access to plaintiff's premises was not specifically prohibited and coverage does not attach.").

**

Re-pleading would obviously be futile. Plaintiff has conclusively established in its Complaint that access to the premises was not prohibited. Plaintiff cannot now change its position to say or plead otherwise. This is a perfect example of when the "estoppel" doctrine should genuinely be applied.

## Conclusion

This Court should dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

_____/s/ Robert L. Byer_____

Robert L. Byer (PA 25447)
Julie S. Greenberg  (PA 79697)

DUANE MORRIS, LLP
600 Grant Street, Suite 5010
Pittsburgh, PA 15219
Ph: 412-497-1004
Fx: 412-202-3330
rlbyer@duanemorris.com
jsgreenberg@duanemorris.com

Damon N. Vocke
(*Admission Pro Hac Vice Pending*)

DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Ph: 212-692-1059
Fx: 312-277-2375
dnvocke@duanemorris.com