IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

| | |
|---|---|
| 1 S.A.N.T., INC.,<br><br>      *Plaintiff,*<br><br>  v.<br><br>BERKSHIRE HATHAWAY, INC. and<br>NATIONAL FIRE & MARINE<br>INSURANCE COMPANY,<br><br>      *Defendants.* | Civil Action No. 2:20-cv-862<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, District Judge

  Defendant National Fire & Marine Insurance Co. ("National Fire")[1] filed its Federal Rule of Civil Procedure ("Rule") 12(b)(6) Motion to Dismiss (ECF No. 17). Briefing is complete, and oral argument occurred on October 28, 2020. The matter is ripe for resolution. For the reasons set forth here, Defendant's Motion to Dismiss is granted.

### FACTUAL AND PROCEDURAL HISTORY

  Plaintiff 1 S.A.N.T., Inc., d/b/a Town & Country and d/b/a Gatherings Banquet and Event Center ("1 S.A.N.T."), the operator of a restaurant and tavern business, bought commercial property insurance for lost business income for a policy term of June 1, 2019 to June 1, 2020

---

[1] Plaintiff initially filed its complaint against both Berkshire Hathaway, Inc. and National Fire & Marine Insurance Company. 1 S.A.N.T. voluntarily dismissed without prejudice all claims against Berkshire Hathaway (ECF No. 24), and the Court terminated Berkshire Hathaway as a party (ECF No. 25).

("Policy"). (ECF No. 15, ¶¶ 3, 13). In response to the COVID-19 pandemic, on March 6, 2020, Governor Tom Wolf declared a "Disaster Emergency" throughout the Commonwealth of Pennsylvania. (*Id.* ¶ 29). On March 19, 2020, Governor Wolf signed an Executive Order ("Governor Wolf's order") closing all non-life sustaining businesses, which included 1 S.A.N.T. (*Id.* ¶ 29). 1 S.A.N.T. incurred, and continues to incur, a substantial loss of business income and other expenses. (*Id.* ¶ 45). 1 S.A.N.T. provided notice to National Fire of its claim for interruption to its business. (*Id.* ¶ 46). On June 4, 2020, National Fire denied 1 S.A.N.T.'s claim. (*Id.* ¶ 47).

1 S.A.N.T. filed a putative class action lawsuit against National Fire, seeking coverage for lost business income resulting from the suspension or reduction of its operations because of the COVID-19 pandemic. (ECF No. 18, p. 6).

National Fire submits that 1 S.A.N.T.'s claim for coverage under the Policy was properly denied because (1) 1 S.A.N.T. did not sustain "direct physical loss of or damage to Covered Property" necessary to trigger coverage under the Policy; (2) 1 S.A.N.T.'s Policy excludes the alleged loss or damage because it was caused by COVID-19, which is barred by the Virus Exclusion provision; and (3) the orders issued by state and local governments in response to COVID-19 did not prohibit access to 1 S.A.N.T.'s property, which is required to trigger Civil Authority coverage. (*Id.*). National Fire submits its Rule 12(b)(6) Motion to Dismiss to the Court asserting that 1 S.A.N.T. does not have a claim under 1 S.A.N.T.'s Policy. (ECF No. 18).

1 S.A.N.T. opposes the Motion to Dismiss and contends the Policy should cover its claim. 1 S.A.N.T. argues that triggering coverage for physical loss or damage does not require physical alteration, that it was triggered because 1 S.A.N.T. could not use the property for its intended purpose. (ECF No. 26, p. 6). Further, it argues that the Virus Exclusion does not bar coverage because Governor Wolf's orders were the efficient, proximate cause of 1 S.A.N.T.'s loss and not

the virus. (*Id.* at 6–7). Alternatively, the ubiquitous presence of the virus is enough to constitute a covered cause of loss. (*Id.* at 7). Finally, 1 S.A.N.T. argues that National Fire should be estopped from applying the Virus Exclusion provision under the theory of Regulatory Estoppel. (*Id.*).

**STANDARD OF REVIEW**

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege enough facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Marcy Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although the Court must accept the allegations as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the Court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a

plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## ANALYSIS

National Fire seeks to dismiss 1 S.A.N.T.'s amended complaint for two reasons. National Fire argues that the Policy does not provide coverage because 1 S.A.N.T. failed to allege that it suffered any direct physical loss or damage as a result of the involuntary business closure, which is necessary to implicate any coverage. National Fire contends that, even if a direct physical loss had been alleged, the Policy contains a broad exclusion for viruses that applies to the COVID-19 pandemic. Before turning to the merits, the Court must consider the general principles governing insurance contract interpretation under Pennsylvania law.

### A.   Principles of Pennsylvania insurance contracts

Courts generally enforce the plain language of an insurance policy. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 901 (3d Cir. 1997) ("If . . . the terms of the policy are clear and unambiguous, the general rule in Pennsylvania is to give effect to the plain language of the agreement.") (citations omitted). Policy exclusions, similarly, are enforced under their plain meaning. *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760–61 (3d Cir. 1985) ("Exclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed . . . ."). Any ambiguity in policy language should be interpreted against the insurer. *McMillan v. State Mut. Life Ins. Co.*, 922 F.2d 1073, 1075 (3d Cir. 1990).

When parties dispute coverage and exclusions under an insurance policy, courts will apply a burden-shifting framework. *See Burgunder v. United Specialty Ins. Co.*, No. CV 17-1295, 2018 WL 2184479, at *4 (W.D. Pa. May 11, 2018). "[I]n an action based upon an 'all risks' insurance policy, the burden is upon the insured to show that a loss has occurred; thereafter, the burden is on

4

the insurer to defend by showing that the loss falls within a specific policy exclusion." *Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1256 (Pa. Super. 2008).

### B. The Court must interpret the plain meaning of 1 S.A.N.T.'s Policy.

"All risks" policies differ from policies that cover specified risks, such as flooding or earthquakes. National Fire's Policy provides general coverage with specific exclusions. If an exclusion does not apply, then the risk is covered. If an exclusion applies, then the risk is not covered. COVID-19, National Fire claims, is an excluded peril under the Virus Exclusion of 1 S.A.N.T.'s Policy. (ECF No. 18, p. 12). But before the Court can even consider the applicability of an exclusion, it must first determine whether there is an insurable loss.

Litigation involving insurance claims arising out of business shutdowns and restrictions imposed by COVID-19 mitigation orders have proliferated in recent months, and courts have had a chance to specifically examine the relevant policy language to determine whether coverage was warranted. Some courts have focused on virus exclusions within policies, many dismissing the cases given their policies' virus exclusion provisions.[2] Other courts have focused on the threshold

---

[2] *See Franklin EWC, Inc. v. Hartford Fin. Servs. Group, Inc.*, No. 20-cv-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (granting Rule 12(b)(6) motion with prejudice because "the loss was caused directly or indirectly by the virus, the Virus Exclusion applies under its plain and unambiguous language"); *Mauricio Martinez DMD, P.A. v. Allied Ins. Co.*, No. 2:20-cv-00401-FtM-66NPM 2020 WL 5240218, at *3 (M.D. Fla. Sept. 2, 2020) (granting Rule 12(b)(6) motion with prejudice applying the policy's virus exclusion); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020) (same); *Turek Enters. Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020) (same); *Wilson v. Hartford Cas. Co.*, No. 20-3384, 2020 WL 5820800, at *15 (E.D. Pa. Sept. 30, 2020) (same); *Mark's Engine Co. No. 28 Rest. v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04423-AB-SK, 2020 WL 5938689, at *9 (C.D. Cal. Oct. 2, 2020) (same). *But see Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co.*, No. 6:20-cv-1174-Orl-22EJK, 2020 WL 5939172, at *6 (M.D. Fla. Sept. 24, 2020) (reserving judgment on the applicability of the virus exclusion pending receipt of the entire policy); *Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am.*, 2:20-cv-1066, 2020 WL 565198 (W.D. Pa. Sept. 23, 2020) (declining jurisdiction and remanding to state court because of a novel state law issue); *Seifert v. IMT Ins. Co.*, No. CV 20-1102 (JRT/DTS), 2020 WL 6120002, at *1 (D. Minn. Oct. 16, 2020) (same).

question of whether the claimants could establish physical loss or damage tied to the novel coronavirus or state and local orders in response to the virus.[3]

The Court will first determine whether, in this case, there was a loss that would trigger coverage under the language of the policy. If so, it will look at whether the virus exclusion applies.

### C.   Coverage under the policy requires direct, physical loss.

The policy that 1 S.A.N.T. bought from National Fire has the following threshold provision for coverage:

> A.  Coverage
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(ECF No. 1-1, p. 16). National Fire asserts that COVID-19 is excluded as a potential Covered Cause of Loss under the Virus Exclusion and that 1 S.A.N.T. has not shown a "direct physical loss of or damage" to the property. (ECF No. 18, p. 13). Indeed, National Fire argues that 1 S.A.N.T. has sustained no "direct physical loss of or damage to" any covered property. It contends that 1 S.A.N.T. has not claimed that the virus is present at its facilities or that any of its employees have contracted the virus. (*Id.*). National Fire points out that access to the building was never

---

[3] *See T & E Chicago LLC v. Cincinnati Ins. Co.*, No. 20-4001, 2020 WL 6801845, at *5 (N.D. Ill. Nov. 19, 2020) (denying plaintiff's claim for coverage because plaintiff did not suffer physical loss); *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, No. 20-23245, 2020 WL 7062449, at *10 (S.D. Fla. Nov. 17, 2020) (granting an insurance company's Rule 12(b)(6) motion because a "loss must arise to actual damage"). *But see Dino Palmieri Salons, Inc. v. State Auto. Mut. Ins. Co.*, No. CV-20-932117 (Ohio Ct. Com. Pl. Cuyahoga Cnty. Nov. 17, 2020) (finding defendant's "physical loss or damage" argument premature at the motion to dismiss stage because plaintiffs alleged the presence of COVID-19 on its premises); *Cajun Conti LLC v. Certain Underwriters at Lloyd's London*, No. 2020-02558 (Civ. Dist. Ct. Parish of Orleans Nov. 4, 2020) (denying defendant's motion for summary judgment because "direct physical loss or damage" constituted a matter of first impression); *Hill & Stout PLLC v. Mut. Of Enumclaw Ins. Co.*, No. 20-2-07925-1 (Wash. Super. Ct. King Cnty. Nov. 3, 2020) (denying motion to dismiss COVID-19-related claims for coverage under "all-risk" policy that covered "physical loss or damage to" property).

impeded and that the building was used for alternate operations, such as takeout. The gist of its argument is, simply, that the interruption of 1 S.A.N.T.'s usual and intended business operations resulting from Governor Wolf's mitigation efforts cannot be considered a direct, physical loss of or damage to the Covered Property, which ends the coverage analysis.

1 S.A.N.T. objects to National Fire's contention that a policyholder must show actual physical damage to invoke policy protections. 1 S.A.N.T. emphasizes that the Policy does not define "direct physical loss of or damage to" property (EFC No. 26, p. 11) and cites a recent COVID-19 case in the Western District of Missouri that interpreted "direct physical loss" broadly to include business closures dictated by government COVID-19 mitigation orders. *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385, at *4–8 (W.D. Mo. Aug. 12, 2020). There, the court denied a motion to dismiss recognizing that the insurer "conflate[d] 'loss' and 'damage' in support of its argument that the Policies require[d] a tangible, physical alteration." *Id.* at *5. The court elaborated, "[E]ven absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose." *Id.* Consulting a dictionary definition, the court found loss included either "the act of losing possession" or "deprivation" of the plaintiff's property. *Id.* (quoting Merriam-Webster, www.merriam-webster.com/dictionary/loss).

1 S.A.N.T. argues that events rendering the property unusable for its intended purpose cause "physical loss of or damage to" property, even if the structure remains intact. *See, e.g., Port Auth. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (finding physical loss or damage results only "if an actual release of asbestos fibers . . . has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable . . ."). It points to a decision of the United States District Court for the Middle

7

District of Pennsylvania, which found that a policyholder was covered for loss of the use of a property despite no physical damage to a home where the home became unusable because of flooding surrounding the home. *Gibson v. Sec'y of U.S. Dep't of Hous. & Urb. Dev.*, 479 F. Supp. 3, 10 (M.D. Pa. 1978).[4] 1 S.A.N.T. also cites a New Jersey Superior Court's recent denial of an insurer's motion to dismiss a COVID-19-related business interruption claim asserted by a group of optometry practices. Transcript of Oral Hearing 29:1 in *Optical Servs. USA v. Franklin Mut. Ins. Co.*, No. 1:20-cv-080690-JHR-KMW (N.J. Super. Ct. Aug. 13, 2020). There, the court recognized the policyholder had stated a valid claim whether "physical damage occurs where a policyholder loses functionality of their property and by operation of civil authority such as the entry of an executive order results in a change to the property." *Id.* at 29:15–20.[5]

1 S.A.N.T. argues that being present at the restaurant created an unsafe situation because of the ongoing pandemic. It points to a case involving forest fires where the policyholder cancelled several performances at its outdoor theater because of dangerous levels of smoke and ash from nearby fires. *Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No 1:15-cv-01932-CKM, 2016 WL 3267247, at *4 (D. Ore. June 7, 2016), *vacated by stipulation of the parties*. The policyholder made a claim for "direct physical loss of or damage to covered property," but the

---

[4] 1 S.A.N.T. also cites *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010) (noting that most cases nationwide find that physical damage to property is unnecessary where, at least, the property has been rendered unusable by a covered cause of loss); *Sentinel Mgmt. Co. v. N.H. Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) ("Direct physical loss also may exist in the absence of structural damage to the insured property."); *Azalea, Ltd. v. Am. States Ins. Co.*, 656 So. 2d 600, 601–02 (Fla. Dist. Ct. App. 1995) (finding coverage where, as a result of an unknown substance released into a sewage treatment plant causing a shutdown and the city's order relating to same, the plant could not be used for its intended purpose).

[5] The court cited *Wakefern Food Corp. v. Liberty Mutual Fire Insurance Co.*, 406 N.J. Super. 524 (App. Div. 2019), where the New Jersey appellate court found that a grocery store's loss of power, despite no physical damage, constituted physical loss.

insurance company denied coverage. *Id.* at *5. The policyholder argued that wildfire smoke caused the injury and harm to the theater including the air within the theater space. *Id.* The court found that "[t]he policy itself [did] not give any indication that the air within a covered building" could not suffer contamination or infiltration. *Id.* at *6. The smoke and ash, although they did not cause structural damage, were enough to constitute physical damage to trigger coverage. *Id.* at *11. 1 S.A.N.T. also points to the holding in *Murray v. State Farm Fire & Casualty Co.*, 509 S.E.2d 1, 17 (W. Va. 1998) where the court recognized that "[l]osses covered by the policy[] includ[e] those rendering the insured property unusable or uninhabitable," even "in the absence of structural damage to the insured property." There, the court held that the properties suffered "real damage" when they became "unsafe for habitation." *Id.* Physical loss "may exist in the absence of structural damage" to the insured property in a circumstance where there is a significant risk of catastrophic loss. *Id.*

The Court's review of the language of the Policy reveals that National Fire has not defined "direct physical loss of" or "direct physical damage to." But failing to define a coverage term does not mean that it is ambiguous. *Capital Flip, LLC v. Am. Modern Select Ins. Co.*, 416 F. Supp. 3d 435, 439 (W.D. Pa. 2019) (citing *Heebner v. Nationwide Ins. Enterprise*, 818 F. Supp. 2d 853, 857 (E.D. Pa. 2011)). When a policy, or any document, neglects to define a term, the Court will read it in the plain and generally accepted meaning of the term. *Id.* Four words are critical to the determination of this issue: "direct," "physical," "loss" and "damage." "Direct"[6] is defined as

> 1a: proceeding from one point to another in time or space without deviation or interruption . . .
> b: proceeding by the shortest way . . .
> 2a: stemming immediately from a source . . .

---

[6] *Direct*, Merriam-Webster, https://www.merriam-webster.com/dictionary/direct (last visited Jan. 15, 2021).

> b: being or passing in a straight line of descent from parent to offspring . . .
> c: having no compromising or impairing element . . . .

The definition of "physical"[7] is

> 1a: of or relating to natural science
> b(1): of or relating to physics
> (2): characterized or produced by the forces and operations of physics
> 2a: having material existence: perceptible especially through the senses and subject to the laws of nature[,] . . . motion, and resistance . . .
> b: of or relating to material things
> 3a: of or relating to the body . . . .

"Loss"[8] is

> 1: DESTRUCTION, RUIN . . .
> 2a: the act of losing possession . . .
> b: the harm or privation resulting from loss or separation . . .
> c: an instance of losing . . .
> 3: a person or thing or an amount that is lost . . .
> 4a: failure to gain, win, obtain, or utilize . . .
> b: an amount by which the cost of something exceeds its selling price . . .
> 5: decrease in amount, magnitude, or degree . . .
> 6: the amount of an insured's financial detriment by death or damage that the insurer is liable for . . . .

Finally, "damage"[9] is defined as "loss or harm resulting from injury to person, property, or reputation."

The Court examined these ordinary, dictionary definitions of the relevant terms in the context of their usage in the Policy language. For example, "loss" and "damage" do not stand

---

[7] *Physical*, Merriam-Webster, https://www.merriam-webster.com/dictionary/physical (last visited Jan. 15, 2021).

[8] *Loss*, Merriam-Webster, https://www.merriam-webster.com/dictionary/loss (last visited Jan. 15, 2021).

[9] *Damage*, Merriam-Webster, https://www.merriam-webster.com/dictionary/damage (last visited Jan. 15, 2021).

alone but are modified by the terms "direct physical." The Court must give effect to *all* the terms in the context of the Policy language. The starting point of the analysis is "direct." The ordinary usage recounted presupposes a level of immediacy that is simply not present in 1 S.A.N.T.'s theory of coverage. Moreover, when combined with "physical", there is no reasonable question that the Policy language presupposes that the request for coverage stems from an *actual impact* to the property's structure, rather than the diminution of its economic value because of governmental actions that do not affect the structure. This understanding is highlighted, confirmed and consummated by the terms "loss of" or "damage to." The ordinary usage of these terms, individually and in the context of the other terms in the sentence, can only be reasonably construed as extending to events that impact the physical premises completely (loss) or partially (damage). On the other hand, a determination that "direct physical loss of or damage to" the property can refer to mere economic losses caused by governmental orders limiting the use of property (while not impacting the physical structure itself) would stretch the language beyond the plain meaning of its terms and beyond the interpretive authority of the Court.

While 1 S.A.N.T. has cited cases in which courts have accepted the interpretation of the same or similar policy language that it proffers here, the Court is not persuaded by the reasoning of those cases. Rather, the growing body of case law rejects the contrived definition of "direct physical loss of or damage to" that would provide coverage for economic losses unrelated to physical impact to the covered structure. The Court believes that these cases represent the more reasonable interpretation of the policy language.

In a case with similar facts and similar insurance coverage, the Middle District of Florida recently analyzed and defined "direct physical loss of or damage to" in *Prime Time Sports Grill, Inc. v. DTW 1991 Underwriting Ltd.*, No. 8:20-cv-771-T-36JSS (M.D. Fla. Dec. 17, 2020). There,

11

the court examined Florida jurisprudence and concluded that "there must be tangible damage to property for a 'direct physical loss' to exist." *Id.* at *6. The court cited *Homeowners Choice Property & Casualty v. Miguel Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017), where the state court recognized that "direct" and "physical" must "modify loss and impose the requirement that the damage be actual." *Id.* at *5.

The Eastern District of Pennsylvania took a similar approach. In *Newchops Restaurant Comcast LLC v. Admiral Indemnity Co.*, No. 20-1949 (E.D. Pa. Dec. 17, 2020), the court found property damage must be "a distinct, demonstrable, physical alteration of the property." (quoting 10A *Couch on Insurance* § 148.46 (3d ed. 1995)). The court continued that "[p]ure economic losses are intangible and do not constitute property damage." *Id.* at 9 (quoting 9A *Couch on Insurance* § 129.7). The court held that "damage must be physical" and that orders prohibiting access do not constitute physical damage. *Id.* at 10.

The Court holds that after reading the ordinary usage of the terms in the Policy, the language can be construed only as extending to events that physically impact the covered property.

1) **Virus's ubiquity**

Another argument that 1 S.A.N.T. asserts is that there was "direct physical loss of or damage to" the property because COVID-19 is a physical substance that is readily transmissible and ubiquitous. (ECF No. 26, p. 19). The virus attaches to, and damages, property by making premises unsafe and unusable. (*Id.*). In other words, because virus particles are, as 1 S.A.N.T. contends, ubiquitous physical objects, the presence of those physical particles can be said to render the property unsafe to inhabit and thus can constitute physical loss or damage.

Courts have found physical loss or damage to property that was too unsafe to inhabit. *See Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349, 352 (8th Cir. 1986) (allowing a claim for business income coverage where the risk of collapse required abandonment of grocery

12

store); *Manpower Inc. v. Ins. Co. of Pa.*, No. 08C0085, 2009 WL 3738099, at *3 (E.D. Wis. Nov. 3, 2009) (finding inability to use building, which was unstable but had suffered no visible damage, would support the business income claim); *Hughes v. Potomac Ins. Co.*, 18 Cal. Rptr. 650 (Cal. Ct. App. 1962) (finding a house was unsafe and allowing coverage after a landslide caused a portion of the ground surrounding property to collapse).

National Fire rejects this theory. It argues that 1 S.A.N.T.'s ubiquity theory conflicts with the facts pled because 1 S.A.N.T. has not alleged that someone has been infected, that COVID-19 was present in the building, or that the building even closed because of the ubiquitous presence of the virus (it remained open for takeout operations). (ECF No. 18, p. 19). National Fire highlights that no employee or customer has been alleged to have been infected by COVID-19. (*Id.*). But even had 1 S.A.N.T. alleged an infection on its property, it contends that it would still not constitute physical damage.[10]

The cases cited by 1 S.A.N.T. all involve an actual impeding physical danger already impacting the site. The ubiquity theory cannot broaden the policy definition of "direct physical loss of or damage to" discussed above. There is no question that the novel coronavirus is a physical substance. But even if it were, as argued, so ubiquitous as to be considered present at the insured property, it still does not fall within the policy definition for a covered loss. The theory also is inconsistent with the pleading, which shows that the virus was not so physically ubiquitous as to prevent access to or operations at the property.

---

[10] In *Social Life Magazine Inc. v. Sentinel Insurance Co.*, 20-cv-3311 (S.D.N.Y.), a recent COVID-19 insurance case, the court ruled that "Social Life's property has not suffered any damage." The judge replied to Social Life's contention that the "virus exists everywhere" by saying, "It damages lungs. It doesn't damage printing presses." Jeff Sistrunk, *Magazine Turns to 2d Cir. in Coronavirus Coverage Fight*, Law360 (May 18, 2020, 4:07 PM), https://www.law360.com/articles/1274622.

### D. Governor Wolf's orders do not trigger coverage under the Civil Authority provision.

The Civil Authority coverage requires an "action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." (ECF No. 1-1, p. 32). The coverage definition requires access to the covered property to be limited because of "direct physical loss of or damage to [other] property." As explained above, 1 S.A.N.T. has failed to plead any such loss or damage, either to the covered property or any other property. This alone would foreclose coverage under the Civil Authority provisions. Coverage can also be denied because reduction to partial access does not suffice to trigger business income coverage under the Civil Authority provisions. *See, e.g., By Development, Inc. v. United Fire & Cas. Co.*, No. Civ. 04-5116, 2006 WL 694991, at *6 (D. S.D. Mar. 14, 2006) (holding that a civil order making access to insured's property harder, but not prohibiting access, did not trigger business-interruption coverage); *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) (finding no coverage under hotel's civil authority provision because FAA order prohibiting airplanes from flying did not prohibit all access to hotel operations); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2489711, *4 (M.D. La. Aug. 28, 2007) (finding no coverage under insured office's civil authority coverage because the direction of Baton Rouge officials to stay off streets did not deny access to business's premises).

Here, the restaurant remained open for takeout and delivery services, and employees had access to the business to service customers. Governor Wolf's orders do not constitute direct physical loss of or damage to any property and, as such, cannot implicate Civil Authority coverage. 1 S.A.N.T. was not denied access to its facilities. The Court holds that the Civil Authority coverage is not implicated under these facts.

## CONCLUSION

1 S.A.N.T and similarly situated businesses unquestionably present as sympathetic parties. They endured interruptions to their business operations in a way that was truly unexpected and unprecedented. Yet, the Court's coverage analysis must be based only on the terms of the insurance contract. An examination of the plain language of the Policy language requires the Court to find in National Fire's favor. There is not coverage because there was no direct physical loss of or damage to the covered property. Without coverage under the Policy, the Court is compelled to grant National Fire's motion to dismiss.

For the reasoning set forth here, Defendants' 12(b)(6) Motion to Dismiss (ECF No. 17) will be granted. An Order of Court will follow.

BY THE COURT:

1-15-21
Dated

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE